**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-02980-NYW

KEASON BURRELL COX,

     Applicant,

v.

MR. DEAN WILLIAMS,
MR. MARK FAIRBURN, Ark Valley AVCF,
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

Applicant Keason Burrell Cox ("Applicant") is a prisoner in the custody of the Colorado Department of Corrections.   Applicant has filed *pro se* an Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application"), [Doc. 4], challenging the validity of his conviction in Jefferson County, Colorado District Court Case Num    ber 04CR3243.   On August 23, 2023, Respondents filed an Answer, [Doc. 30], and on November 16, 2023, Applicant filed a Reply, [Doc. 41].   After reviewing the record, including the Application, the Answer, the Reply, and the state court record, the Court will deny the Application.

## BACKGROUND

On November 9, 2006, Applicant was convicted by a jury of two counts of first-degree murder after deliberation and two counts of crimes of violence.   [Doc. 15-2 at 2; Doc. 18 (State Court Record) at 854].   In Applicant's direct appeal proceedings, the Colorado Court of Appeals ("CCA") summarized the relevant facts as follows:

According to the prosecution's evidence, defendant was a drug dealer who believed that one of his girlfriends had stolen money from him.   He went to her house where he waited for her and repeatedly called her and demanded that she come home.   The girlfriend, along with one of her friends, went to her house where defendant shot and killed both women.   At trial, defendant argued that he acted in self defense.

[. . .]

The prosecution introduced evidence that defendant repeatedly threatened to kill the girlfriend, that he left threatening voice messages for her to come home, and that a neighbor overheard defendant yelling at the women to get back inside the house, along with loud arguing between defendant and the girlfriend shortly before the shots were fired.   The physical evidence showed that the girlfriend was shot in the head at point blank range by a gun owned by defendant.   The evidence also showed that the friend had been shot multiple times when she was in the basement.   According to the evidence, the friend had been shot with two guns, one of which had defendant's DNA on it and was found under the friend's body.   When defendant was arrested, he had his girlfriend's blood on his arm. Defendant did not dispute that he shot the victims.   In addition, defendant made incriminating statements to another girlfriend and a cellmate at jail.

[*Id.* at 2, 13–14].

Applicant filed a direct appeal of his conviction and the CCA affirmed the judgment. [Doc. 15-2].   The Colorado Supreme Court (CSC) denied certiorari.   [Doc. 15-3]. Applicant then filed a Colo. R. Crim. P. 35(c) postconviction motion and a supplemental Rule 35(c) motion, which were denied.   [Doc. 15-14].   Applicant appealed, and the CCA affirmed.   [Doc. 15-6].   The CSC denied certiorari review.   [Doc. 15-7].   Applicant then filed a second Rule 35(c) motion, which the district court denied as successive. [Doc. 15-10 at 3].   The CCA affirmed.   *See generally* [*id.*].   Applicant filed a petition for rehearing, which was denied, [Doc. 15-11], and the CSC denied certiorari review, [Doc. 15-12].

2

Applicant initiated this § 2254 proceeding on November 16, 2022.   [Doc. 1].   He filed the operative Application on December 21, 2022, asserting forty-nine claims for relief.   [Doc. 4].   On February 2, 2023, the Court ordered Respondents to file a Pre-Answer Response addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state remedies pursuant to 28 U.S.C. § 2254(b)(1)(A) if they intended to raise either or both of those defenses in this action.   [Doc. 8].   Respondents filed a Pre-Answer Response on March 13, 2023, asserting that some of Applicant's claims were procedurally barred and stating that they did not intend to assert a defense of untimeliness.   [Doc. 15].   Applicant did not file a reply to the Pre-Answer Response despite having been given the opportunity to do so.   In a June 29, 2023, Order to Dismiss in Part and for Answer ("June 29 Order"), [Doc. 22], this Court entered an order dismissing Claims 13 and 20–23 with prejudice as not cognizable and dismissing Claims 5–12, 15, 18, 19, 26–29, 31–34, and 39 with prejudice as procedurally barred.   Thus, the remaining claims in the Application which the Court addresses herein are:[1]

1. The trial court reversibly erred in holding no hearing to evaluate and make findings concerning the reliability of expert conclusions purportedly based on the scientific method that devasted Applicant's defense of self-defense;

2. The trial court reversibly erred by issuing a provocation instruction concerning self-defense that was unsupported by the evidence. This instruction misleadingly suggested that Applicant lost his right to self-defense before the incident occurred;

3. The trial court reversibly erred by admitting irrelevant evidence that Applicant's ex-girlfriend felt she would be in danger after trial; this evidence encouraged the jury to convict Applicant not because he was guilty but to protect his ex-girlfriend;

---

[1] The Court uses herein the original claim numbers as identified in the Application rather than the re-numbered version in Respondents' Answer.

4. Assuming for the sake of argument that the errors listed in arguments 1-3 do not give rise to reversible error when considered individually, their cumulative impact does;

14. Counsel had inadequate time to prepare for trial;

16. Failure to interview witnesses;

17. Failure to elicit evidence that the alleged victim had stabbed Applicant on previous occasions;

24. Counsel rendered constitutionally deficient performance when they did not continue to attempt to obtain a hearing pursuant to *People v. Shreck,* 22 P.3d 69 (Colo. 2001);

25. Counsel rendered constitutionally deficient performance when they failed to renew an objection to the prosecution's CRE 404(b) motion concerning evidence of a $50,000 drug deal gone bad;

30. Failed to investigate witnesses or evidence;

35. The trial court should have granted a continuance;

36. Admission of evidence through witnesses who should have been excluded;

37. Admission of other-act evidence;

38. Admission of expert Cindy Burbach testimony;

40. Cumulative error;

41. Improper denial of defense's jury instruction;

42. Court improperly told the jury that Applicant's theory of the case instruction was Applicant's theory of the case instruction;

43. Prosecutorial misconduct for playing an audio recording admitted into evidence;

44. Allowing admission of Applicant's jail calls;

45. Trial court allowed the witnesses to answer jury questions;

46. Improper admission of victim's bank statement;

47. Lack of foundation for the admission of photographs;

48. Trial court admitted evidence over defense objections as to relevance, cumulative nature and not to scale; and

49. Trial court failed to grant motion for judgment of acquittal.

[Doc. 4 at 9–17].

## LEGAL STANDARDS

The Court must construe the Application and other papers filed by Applicant liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Review under the AEDPA serves only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quotation marks and citation omitted). Applicant bears the burden of proof under § 2254(d).

5

*See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The threshold question under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.   *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).   Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."   *Id*. at 412.   Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).   If there is no clearly established federal law, that is the end of the Court's inquiry under § 2254(d)(1).   *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.   *See Williams*, 529 U.S. at 404–05.   A state court decision is contrary to clearly established federal law if the state court (a) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (b) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."   *Id.* at 405–06.   "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"   *Id*. at 406 (citation omitted).

"A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases,

6

but unreasonably applies it to the facts." *Id.* at 407–08.   The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See id.* at 409–10.   "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.   Rather that application must also be unreasonable." *Id*. at 411.   "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006). Furthermore,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity.   The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted).   In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102.   In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 ("[E]ven a strong case for relief does not mean the state court's

contrary conclusion was unreasonable.").   Applicant must establish that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 562 U.S. at 103.

The state appellate court is not required to cite to the clearly established Supreme Court case law, or even be aware of it, so long as nothing in the state appellate court decision contradicts that law.   *Early v. Packer,* 537 U.S. 3, 8 (2002).   Thus, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the federal court presumes an adjudication on the merits and applies AEDPA deference.   *See Harris v. Poppell,* 411 F.3d 1189, 1196 (10th Cir. 2005).

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).   Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.   Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, and Applicant bears the burden of rebutting the presumption by clear and convincing evidence.   "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"   *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).   "As the plain terms of the statute indicate," review under § 2254(d)(2) is limited to the evidence contained in the state court record.   *Hooks v.*

*Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012).

Finally, the Court's analysis is not complete even if Applicant demonstrates the existence of a constitutional violation.   "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993)[.]"   *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) ("For reasons of finality, comity, and federalism, habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.") (internal quotation marks omitted); *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* any time it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review).   Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict.   *Brecht*, 507 U.S. at 637.   "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict."   *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error."   *O'Neal*, 513 U.S. at 435.   The Court makes this harmless error determination based upon a review of the entire state court record.   *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

**ANALYSIS**

**I.  Merits of Remaining Claims**

    **A.  Claim 1**

In Claim 1, Applicant contends that the trial court "reversibly erred in holding no hearing to evaluate and make findings concerning the reliability of expert conclusions purportedly based on the scientific method that devasted [Applicant's] defense of self-defense."   [Doc. 4 at 9].

    **1.  State Court Proceedings**

On direct appeal, the CCA set forth the procedural background pertinent to this claim as follows:

> In September 2005, the prosecution's crime scene reconstruction expert wrote a report reflecting his analysis of the crime scene.   The same month, the People disclosed the report to defendant.
>
> In October 2005, defendant filed a pretrial motion to exclude expert testimony regarding crime scene reconstruction.   In the motion, defendant asked the court to exclude crime scene reconstruction testimony, or, in the alternative, to hold "a hearing to determine the reliability of such testimony." The motion alleged that the prosecution's expert testimony generally "fails on each of the prongs of the *Shreck* test.[2]   However, defendant did not identify the prosecution's expert or challenge any specific opinions, other than a vague reference that the expert based his opinions on the word of "snitches."

---

[2] *See People v. Shreck*, 22 P.3d 68 (Colo. 2001); *see also People v. Rector*, 248 P.3d 1196, 1200 (Colo. 2011) ("In determining admissibility of expert testimony, a trial court employs a *Shreck* analysis, which requires that: (1) the scientific principles underlying the testimony are reasonably reliable; (2) the expert is qualified to opine on such matters; (3) the expert testimony will be helpful to the jury; and (4) the evidence satisfies CRE 403.") (citations omitted); *see also id.* at 1202 ("Once a party requests a *Shreck* analysis, a trial court is vested with the discretion to decide whether an evidentiary hearing would aid the court in its *Shreck* analysis.").

In response, the prosecution identified the expert and argued that other courts had found the underlying scientific principles to be reliable and the expert to be qualified to provide expert testimony on such matters.   In support of its position, the prosecution attached the transcripts of a *Shreck* hearing in another case involving its proffered expert.   The prosecution asked the court to adopt the previous findings of the other court.   The prosecution later submitted a copy of the other court's written order.

In January 2006, defendant filed his final arguments on pending motions, in which he argued that a *Shreck* hearing was necessary because the transcripts from the other case involved different facts.   Defendant also argued that it was "not clear" what the basis for the expert's conclusions were or what methodology the expert used to reach his conclusions.

In February 2006, after a three-day hearing, the court entered a written order relating to ten pretrial motions.   With respect to defendant's motion to exclude the expert testimony, the court found that the motion and response did not identify the expert's anticipated testimony, that the court had "no knowledge of the opinions or their basis," and that the court had "no way of evaluating" the assertions made by defendant in his motion. Although the court indicated it was "inclined" to follow the legal analysis of the other court, it would "not guess" about the expert's opinions and the bases for them, or whether the legal analysis in the other case applied here. The court concluded that the expert's opinions would "not be admitted in any event unless the People provide a timely disclosure in writing" at least sixty days before trial.

In March 2006, seven months before trial, the prosecution filed a notice of crime scene expert report with the expert's report and curriculum vitae attached.   The prosecution alleged that it had disclosed the report to defendant in September 2005 and that it anticipated that the expert would testify regarding the findings contained in the report.   Defendant did not respond to the prosecution's notice, renew his motion, or request a *Shreck* hearing before trial.

Defendant's trial began in October 2006.   The prosecution called the expert as its final witness.   Immediately before the expert testified, defendant's only comment was that he "continued [his] objection" to the witness being "qualified as an expert."   When the court asked what its previous ruling had been, defendant responded:

> What I had as the Court's ruling was that you hadn't been told
> exactly what the findings were; at least this is the last that I
> have.   And just expect the People to comply with providing

the reports and the conclusions 60 days prior to trial.

Defendant did not ask the court to rule on his October 2005 motion or request a *Shreck* hearing.

After the prosecution examined the expert regarding his qualifications, training, and subject matter expertise, it asked the court to accept the witness as an expert.   Defendant did not object to any of the prosecution's voir dire or ask the witness any questions but said only that "[he] would stand on the previous record."   The court then recognized the witness as an expert in "blood stain pattern analysis, [and] crime scene reconstruction."

[Doc. 15-2 at 4–7].

The CCA then proceeded to analyze, under state law, Applicant's claim that the trial court had erroneously admitted the expert's testimony without holding a *Schreck* hearing, as follows:

We reject defendant's argument that the trial court was required to conduct an evidentiary hearing pursuant to *Schreck*.

A trial court is not required to conduct an evidentiary hearing under *Shreck* provided it has before it sufficient information to make specific findings under CRE 403 and CRE 702 about the reliability of the scientific principles involved, the expert's qualification to testify to such matters, the helpfulness to the jury, and potential prejudice.

 [*People v.*] *Rector*, 248 P.3d [1196] at 1202 [Colo. 2011].

"Moreover a trial court may exercise its discretion and determine that a party's request does not give rise to a *Shreck* analysis at all."   *Id.*   "If a party fails to state a specific challenge pursuant to *Shreck*, a trial court may determine that the request does not warrant a *Shreck* analysis."   *Id.*   "Thus, not every motion will necessitate a *Shreck* analysis, much less an evidentiary hearing."   *Id.*   When deciding "whether a determination of admissibility requires a *Shreck* inquiry, a trial court must consider the issues framed in the motion before it."   *Id.*

Here, one year before trial, defendant filed a motion vaguely challenging the reliability of crime scene investigation, and, in the alternative, asking for a *Shreck* hearing to make that determination.   Although the motion did not

12

identify the expert or refer to the report, it is apparent that defendant had the expert's report at the time.

When the court entered its February 2006 written order, the court did not have the expert's report.   Therefore, the court said that it did not know what the expert's opinions were, what the bases of the opinions were, what the expert's qualifications were, or what the expert's anticipated testimony would be.   The order required only that the prosecution comply with the disclosure requirements.   The order did not, and, without more information, could not, address the substance of defendant's motion.

The prosecution's March 2006 notice said the prosecution had disclosed the expert's report to defendant in September 2005.   Defendant did not respond to the notice or renew his request for a *Shreck* hearing.

Indeed, when defendant "continued his objection" before the expert testified, defendant did not ask for a *Shreck* hearing.   Rather, when the court asked defendant what the court's ruling was, he responded only that the court ordered the prosecution to comply with disclosure requirements. Defendant did not say he wanted the expert's testimony excluded or a *Shreck* hearing.

At trial, the purpose of an objection is not only to express disagreement with a proposed course of action, but also to afford the court an opportunity to focus on the issue and hopefully avoid the error.   *Martinez v. People*, 244 P.3d 135, 139 (Colo. 2010).   In accordance with the contemporaneous objection rule, "[a]n accused may not withhold his objections until completion of his trial and after conviction, and later complain of matters which, if he had made a timely objection, would have allowed the trial court to take corrective action."   *People v. Petschow*, 119 P.3d 495, 499 (Colo. App. 2004) (quoting *People v. Rollins*, 892 P.2d 866, 874 n.13 (Colo. 1995)).

When defendant said he would "stand on the previous record," the record included defendant's vague October 2005 motion and the January 2006 final argument addressing five different motions, of which that as to the expert's testimony was last.   The court's only ruling on the expert witness issue was that the court did not have sufficient information before it to rule substantively.   This was the record upon which defendant said he would stand.   When the court asked for the status of the motion and its ruling, defendant did not ask the court to rule on the motion.   Had defendant instead told the court it had yet to rule on his request to exclude the expert's testimony or have a *Shreck* hearing, the court would have been alerted to the need to rule on the substantive claims and arguments he made a year

13

earlier.   Defendant did not do so.   Rather, he merely expressed his continuing disagreement regarding the admissibility of the testimony and did not ask the court to rule.

The purpose behind the contemporaneous objection rule is more than semantic.   Defendant may have chosen to abandon his request for a *Shreck* hearing, last made nine months before trial.   At trial, defendant did not ask the court to rule on his pretrial motion, and did not voir dire the expert.   Thus, we conclude that the trial court did not abuse its discretion when it did not hold a *Shreck* hearing at trial.   *See Rector*, 248 P.3d at 1201.

Even assuming defendant did not abandon his request for a *Shreck* hearing, we conclude that the trial court did not abuse its discretion when, based on the prosecution's direct examination, it ruled that the expert was qualified in the fields of blood stain pattern analysis and crime scene reconstruction, and permitted him to testify.   A trial court must consider the issues "as framed in the motion before it."   *Id.*   In light of defendant's decision at trial not to object to the prosecutor's void dire of the expert, not to voir dire the expert himself, and not to ask for a *Shreck* hearing, we conclude the trial court acted within its discretion to admit the expert testimony.   *See id.* at 1200.

Accordingly, we conclude that the trial court did not abuse its discretion when it admitted the expert witness's testimony without a *Shreck* hearing.

[*Id.* at 7–12].

## 2.   Analysis

Applicant does not contend that the CCA's conclusion was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See* 28 U.S.C § 2254(d)(2).   Applicant also has failed to establish that the CCA's decision was contrary to or an unreasonable application of clearly established federal law.   *See id.* § 2254(d)(1).   State court decisions that rest on matters of state law are binding on a federal habeas court.   *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002).   As such, federal habeas corpus relief generally does not

lie to review state law questions about the admissibility of evidence. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).   This Court thus is bound to accept the CCA's conclusion that the expert testimony was admissible under state law unless Applicant establishes that the challenged evidentiary ruling amounts to a violation of the Due Process Clause.

The Tenth Circuit has summarized the case law governing § 2254 claims involving the admission of evidence that is alleged to have violated due process as follows:

> In *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), the Supreme Court held that when a state court admits evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief."   And in *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991), the Court made clear that this principle holds true regardless of whether the evidence at issue was properly admitted pursuant to state law.

*Lott v. Trammell*, 705 F.3d 1167, 1190–91 (10th Cir. 2013) (parallel citations omitted).   In order to declare a denial of due process, the Court "must find that the absence of [fundamental] fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial."   *Lisenba v. California*, 314 U.S. 219, 236 (1941).

The state court rulings were not contrary to this federal standard.   The Court finds that the trial court's admission of the expert testimony without a *Shreck* hearing was not so unduly prejudicial that it rendered the trial fundamentally unfair.   At trial, the court recognized the witness as an expert after the prosecution examined him regarding his qualifications, training, and subject matter expertise, without any request from the defense to voir dire the expert, any request by the defense for a *Shreck* hearing, or any objection

from defense counsel other than that "[he] would stand on the previous record." [Doc. 15-2 at 7].   Evidence concerning "blood stain pattern analysis, [and] crime scene reconstruction" was clearly relevant to the case, as demonstrated by the fact that the defense called its own crime scene reconstruction and blood spatter expert at trial.   *See* [*id*. at 11].   In light of the substantial evidence of Applicant's guilt, summarized in detail by the CCA on direct appeal, the Court finds that the admission of the expert's testimony did not render Applicant's trial fundamentally unfair in violation of due process.

The admission of the expert testimony without a *Shreck* hearing was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 562 U.S. at 103.   Therefore, Claim 1 fails on the merits.

**B.    Claim 2**

In Claim 2, Applicant asserts that the trial court reversibly erred by issuing a provocation jury instruction concerning self-defense that was unsupported by the evidence, and that the instruction misleadingly suggested that Applicant lost his right to self-defense before the incident occurred.[3]   [Doc. 4 at 9].

**1.    State Court Proceedings**

The CCA addressed this claim on direct review as follows:

Defendant contends that the trial court committed plain error when it instructed the jury on provocation.   We disagree.   Under the doctrine of provocation, a person is not justified in using physical force if, with intent to cause bodily injury or death to another person, he or she provokes the victim

---

[3] Although Applicant does not specify the jury instruction he is referring to, the Court notes that Jury Instruction 19 includes a provocation instruction.   *See* [Doc. 18 (State Court Record) at 824–25].

into using unlawful physical force.   Section 18-1-704(3)(a), C.R.S. 2011. An instruction on provoking the victim, should be given when (1) self-defense is an issue in the case; (2) there was evidence that the victim made an initial attack on the defendant; and (3) there was evidence that the defendant's conduct or words were intended to cause the victim to make such an attack and provide a pretext for injuring the victim.   *People v. Silva*, 987 P.2d 909, 914 (Colo. App. 1999).

Because defendant did not object to trial, we review this contention for plain error.   See Crim. P. 52(b); *People v. Miller*, 113 P.3d 743, 750-52 (Colo. 2005).   To warrant reversal under this standard, a defendant must show an "obvious" and "substantial" error that "so undermine[d] the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction."   *People v. Vigil*, 127 P.3d 916, 930 (Colo. 2006) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)).

Plain error review requires us to determine whether the instructional error prevented the jury from making a finding that the law requires so, and, in so doing, undermined the fundamental fairness of his trial.   *Auman v. People*, 109 P.3d 647, 665 (Colo. 2005).   In this regard, we must determine whether a reasonable possibility exists that the erroneous instruction contributed to defendant's conviction such that serious doubt is cast upon the reliability of the jury's verdict.   *Id.*

[Doc. 15-2 at 12–13].

The CCA proceeded to recount the prosecution's evidence that Applicant had repeatedly threatened to kill his girlfriend, that he left threatening voice messages for her to come home, that a neighbor overheard loud arguing and Applicant yelling at the women to get inside the house shortly before the shots were fired, that the girlfriend was shot at point blank range with a gun owned by Applicant, that her friend had been shot with two guns, one of which had Applicant's DNA on it, and that when Applicant was arrested, he had his girlfriend's blood on his arm.   [*Id.* at 13–14].   The CCA cited additional evidence that Applicant did not dispute that he shot the victims and that he had made incriminating statements to another girlfriend and a cellmate at jail.   [*Id.* at 14].   Ultimately, the CCA

concluded that, "[g]iven this evidence . . . the provocation instruction did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *Id.*

   2.   **Analysis**

Applicant does not contend that the CCA's conclusion was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C § 2254(d)(2).   Applicant also has failed to establish that the CCA's decision was contrary to or an unreasonable application of clearly established federal law. *See id.* § 2254(d)(1).   The fact that a jury instruction was allegedly incorrect under state law is not a basis for habeas relief. *Estelle,* 502 U.S. 71–72.   "[A]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive a petitioner of a fair trial and . . . due process of law." *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005) (quotation omitted).   The only question for the court "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).   The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* (quoting *Cupp*, 414 U.S. at 147).   As such, "[a] § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997).

18

The Due Process Clause requires the prosecution to prove every element of a charged offense beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358, 364 (1970).   To demonstrate a constitutional error from a jury instruction in a state criminal trial, a habeas petitioner must show (1) an "ambiguity, inconsistency, or deficiency" in the instruction, and (2) a "reasonable likelihood" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.  *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (quotation marks and citations omitted).  *See also Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (explaining that the constitutional inquiry is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard").

Applicant's bare contention that the provocation jury instruction was unsupported by the evidence is refuted by the CCA's citation to the substantial record evidence supporting the instruction.  Applicant further contends that the provocation instruction was "misleading" because it "suggested that Applicant lost his right to self-defense before the incident occurred."  [Doc. 4 at 9].  However, an instruction on an exception to an affirmative defense is not "misleading" simply because it could undermine the defense; that is the nature of an exception.  "Trial courts have a duty to instruct the jury on all matters of law applicable to the case."  *Pearson v. People*, 502 P.3d 1003, 1007 (Colo. 2022) (quoting *Roberts v. People*, 399 P.3d 702, 704-05 (Colo. 2017).   Under Colorado law, the same standard that governs the propriety of affirmative defense instructions governs the propriety of instructions on exceptions to affirmative defenses.  *Galvan v.*

*People*, 476 P.3d 746, 754 (Colo. 2020).   Thus, "when the trial court instructs the jury on the affirmative defense of self-defense, it should instruct the jury on the provocation exception or any other exception to that defense if the exception is supported by some evidence."   *Id.*   Here, there was ample evidence, as recounted in the CCA's opinion, to support a provocation exception to self-defense.   Applicant has failed to show an "ambiguity, inconsistency, or deficiency" in the instruction or a "reasonable likelihood" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.   *Waddington*, 555 U.S. at 190–91.

Ultimately, the Court cannot conclude that the trial court's approval of the provocation jury instruction was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 562 U.S. at 103.   Applicant has not met his "heavy burden" to set aside his conviction based on an erroneous jury instruction.   *Nguyen*, 131 F.3d at 1357.   For these reasons, Applicant is not entitled to relief on Claim 2.

## C.    Claim 3

In Claim 3, Applicant asserts that the trial court reversibly erred by admitting irrelevant evidence that Applicant's ex-girlfriend felt she would be in danger after trial, and that this evidence encouraged the jury to convict Applicant not because he was guilty but to protect his ex-girlfriend.   [Doc. 4 at 9].

### 1.    State Court Proceedings

On direct appeal, the CCA addressed and disposed of this claim as follows:

20

Defendant contends that the trial court erred when it asked defendant's former girlfriend a juror question about whether she felt she was in danger. We disagree.

"When the applicable rules of law and evidence are applied and after consult[ation] with counsel, the decision of whether to ask a juror's question is committed to the sound discretion of the trial court."   *Medina v. People*, 114 P.3d 845, 847 (Colo. 2005).   Like other instances where a trial court errs in admitting otherwise inadmissible evidence, improper juror questions asked by the court will be reviewed for harmless error.   *Id.*

Here, after defendant's former girlfriend testified, a juror asked, "Do you still at this time feel you may be in possible danger after today's testimony?" Defendant objected to this question on the basis that there had "been no evidence" because the witness "hasn't indicated that she has any kind of fear at this time or concern."   The prosecutor responded that "fear is relevant."   The court said that "both sides have gone [into] this a lot" and overruled defendant's objection.   When asked the question, the witness responded, "I do."

Defendant argues that relevance was implicit in his objection and, therefore, he preserved this issue for review.   The People disagree and argue that we should review this issue only for plain error.   We agree with defendant that his objection preserved this issue on appeal.

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   CRE 401.   Evidence that is not relevant is not admissible.   CRE 402.

At trial, defendant's former girlfriend testified, without objection, that she was afraid of defendant, that she told the police that she was afraid of defendant, that she did not want anything to happen to her because she talked to the police, that she was "scared of what could happen to [her] if [she] told everything," and that when defendant called her by the victim's first name, she became afraid that defendant "could come out and/or have somebody try to hurt [her.]"   The jury also asked the girlfriend whether she was worried that she put her friend in danger after a car windshield was broken and why she did not tell defendant she changed her locks.   The jury also requested to hear again the tape recording of the telephone conversation when defendant called the girlfriend by the victim's name.

Defendant thoroughly cross-examined the girlfriend and impeached her based on her seemingly inconsistent statements and the increased details

she included in more recent statements.  Defendant also questioned her about her "friendly" relationship with the investigating officer and whether her explanation of her reluctance to talk to the police was truthful.  During closing arguments, defendant argued that "hell hath no fury like a woman scorned" and that she "suddenly remembered" details only after she learned that she was not defendant's only girlfriend.  Thus, her credibility was at issue in this case.  Whether the girlfriend was afraid of defendant was relevant to assessing her credibility.  *See People v. Villalobos*, 159 P.3d 624, 630 (Colo. App. 2006) (evidence of a witness's fear of retaliation is admissible to explain his or her change in statement or reluctance to testify); *People v. James*, 117 P.3d 91, 94 (Colo. App. 2004) (similar); *People v. Skinner*, 53 P.3d 720, 724 (Colo. App. 2002) (similar).

Accordingly, we conclude that the trial court did not err when it asked the juror question.

[Doc. 15-2 at 14–17].

### 2.     Analysis

Applicant does not contend that the CCA's determination of this claim was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See* 28 U.S.C § 2254(d)(2).   Applicant also has failed to establish that the CCA's decision was contrary to or an unreasonable application of clearly established federal law.   *See id.* § 2254(d)(1).   Again, federal due process is violated when a state court admits evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair," *Lott*, 705 F.3d at 1190, and that the "absence of [fundamental] fairness fatally infected the trial" and "necessarily prevent[ed] a fair trial," *Lisenba*, 314 U.S. at 236.

At trial, Applicant's former girlfriend testified, without objection, that she was afraid of Applicant, that she did not want anything to happen to her because she talked to the police, and that she was "scared of what could happen to [her] if [she] told everything."

[Doc. 15-2 at 16].   On cross-examination, the defense impeached her based on her inconsistent statements and questioned the truthfulness of her explanation of her reluctance to talk to the police, and in closing argued to the jury that it was only after she learned that she had not been Applicant's only girlfriend that she had "suddenly remembered" new details.   As explained by the CCA, the witness's fear of retaliation by Applicant was relevant to why she may have been reluctant to talk to the police or may have changed her story.   The juror question asking whether the witness still felt that she was in danger was likewise relevant to her credibility.   The witness had already testified about her fear of Applicant, and the trial court's allowance of the subsequent juror question was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.   For these reasons, Applicant cannot recover on Claim 3.

### D.    Claim 4

In Claim 4, Applicant contends that even if the errors listed in Claims 1 through 3 do not give rise to reversible error when considered individually, their cumulative impact does.   [Doc. 4 at 10].

In *Hooks v. Workman*, 689 F.3d 1148, 1195 n.24 (10th Cir. 2012), the Tenth Circuit recognized a circuit spit on the issue of whether the need to conduct a cumulative-error analysis is clearly established law under § 2254(d)(1) but declined to definitively decide the issue.   After *Hooks*, the Tenth Circuit addressed the merits of a cumulative error claim in a habeas corpus action, noting that "[w]e have held that when a habeas petitioner raises a cumulative error argument under due process principles the argument is reviewable

because Supreme Court authority clearly establishes the right to a fair trial and due process." *Bush v. Carpenter*, 926 F.3d 644, 686 (10th Cir. 2019) (internal quotation marks omitted).   At the same time, the panel in *Bush* questioned whether a cumulative error claim is cognizable:

> Although we are bound by Tenth Circuit precedent on this issue, we note, in passing, that the Supreme Court has never recognized the concept of cumulative error.   And, because there is no "clearly established Federal law" on this issue, we question whether a state appellate court's rejection of a cumulative error argument can justify federal habeas relief under the standards outlined in § 2254(d).

*Id.* at 686 n.16.

Even assuming cumulative error analysis is clearly established federal law to be applied in reviewing an application for a writ of habeas corpus, "the only otherwise harmless errors that can be aggregated [in the federal habeas context] are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (quotation marks omitted).

The Court has not found any constitutional errors under Claims 1 through 3 that would warrant a cumulative-error analysis.   Applicant's conclusory assertion that there was cumulative error does not change that fact.   Furthermore, Applicant fails to demonstrate that the CCA's rejection of the cumulative error claim, which was premised on a determination that no errors occurred, was contrary to or an unreasonable application of clearly established federal law.   As a result, Applicant is not entitled to relief with respect to Claim 4.

### E.   Ineffective Assistance of Counsel Claims

In Claims 14, 16, 17, 24, 25, and 30, Applicant asserts that his trial counsel violated his Sixth Amendment right to the effective assistance of counsel.

### 1.   Legal Standard

It was clearly established when Applicant was convicted that a defendant in a criminal case has a Sixth Amendment right to the effective assistance of counsel.   *See Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*, to establish that counsel was ineffective, Applicant must demonstrate both that (1) counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance resulted in prejudice to his defense.   *See id*. at 687.   If Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed.   *See id.* at 697.

In general, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.   "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."   *Id.*   Thus, strategic choices made by counsel "after thorough investigation . . . are virtually unchallengeable."   *Id.* at 690.   There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance," *id.* at 689, and it is Applicant's burden to overcome this presumption by showing that the alleged errors by his counsel were not sound strategy under the circumstances, *see id*.

In the context of federal habeas corpus review under § 2254(d), a state prisoner

"faces an even greater challenge."   *Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir.
2019).   "When assessing a state prisoner's ineffective-assistance-of-counsel claims on
habeas review, we defer to the state court's determination that counsel's performance
was not deficient and, further, to the attorney's decision in how to best represent a client."
*Id*. (quotation marks and brackets omitted).   Thus, review under § 2254(d) is doubly
deferential.   *See id*.   Furthermore,

> [f]ederal habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under §
> 2254(d).   When § 2254(d) applies, the question is not whether counsel's
> actions were reasonable.   The question is whether *any* reasonable
> argument exists that counsel satisfied *Strickland*'s deferential standard.
> And because the *Strickland* standard is a general standard, a state court
> has . . . more latitude to reasonably determine that a defendant has *not*
> satisfied that standard.

*Id*. (quotation marks and citations omitted).

Under the prejudice prong, a petitioner must establish "a reasonable probability
that, but for counsel's unprofessional errors, the result of the proceeding would have been
different."   *Strickland*, 466 U.S. at 694.   "A reasonable probability is a probability
sufficient to undermine confidence in the outcome."   *Id*.; *see also* Richter, 562 U.S. at
112 (stating that "[t]he likelihood of a different result must be substantial, not just
conceivable").   In determining whether a petitioner has established prejudice, the Court
must look at the totality of the evidence and not just the evidence that is helpful to a
petitioner.   *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).   Courts "may address
the performance and prejudice components in any order, but need not address both if
[the petitioner] fails to make a sufficient showing of one."   *Cooks v. Ward*, 165 F.3d 1283,
1292–93 (10th Cir. 1998) (citing *Strickland,* 466 U.S. at 697).

### 2.   Claims 14, 16, and 30

In Claim 14, Applicant asserts that his trial counsel had inadequate time to prepare for trial.   [Doc. 4 at 12].   In Claim 16, he asserts that his trial counsel failed to interview witnesses.   [*Id*.].   In Claim 30, he asserts that his trial counsel failed to investigate witnesses or evidence.   [*Id.* at 15].

### a.   State Court Proceedings

In its order affirming the denial of Applicant's first Colo. R. Crim. P. 35(c) motion and supplemental motion, the CCA addressed and determined Claims 14, 16, and 30 as follows:

> Regarding the claim that counsel was inadequately prepared for trial and failed to investigate or interview certain witnesses, Cox's motions detailed trial counsel's statements to the court on the first day of the trial explaining why she needed a continuance and what investigation was left to do in order to provide him with competent representation.
>
> In rejecting this claim, the postconviction court found that Cox's allegations were insufficient to establish either deficient performance or prejudice.   In particular, addressing the claim about preparation, the court found that the supplemental motion did not describe what preparation would or should have been completed or provide any example of where she was underprepared at the trial.   Similarly, the court found that Cox had not alleged prejudice from counsel's alleged failure to interview witnesses because there was no indication what information would have been obtained from the interviews or how counsel's cross-examination of those witnesses at the trial would have been different had interviews been conducted.
>
> We agree with the postconviction court that the motions failed to allege with specificity how Cox was prejudiced by counsel's allegedly deficient performance.   Although the motions identified a couple of witnesses that counsel failed to interview before the trial, they did not indicate what information those witnesses would have provided.   And, apart from stating that counsel's "inadequate time to adequately prepare for the trial affected all stages of the proceedings," the motions are devoid of any discussion about what information would have been obtained with additional

investigation or interviews or how information gathered through additional investigation would have reasonably affected the outcome of the trial.   *See* [*People v.*] *Chambers*, 900 P.2d [1249] at 1252 [Colo. App. 1990]; *see also* [*People v.*] *Zuniga*, 80 P.3d [965] at 973 [Colo. App. 2003] (concluding that ineffective assistance claim based on counsel's alleged failure to investigate was properly denied without a hearing because allegations of deficient performance were conclusory in that they did not explain what additional investigation counsel should have done and what the results of those efforts would have been).

Moreover, we note, and Cox acknowledges, that trial counsel requested continuances to pursue additional investigation, but the motions were denied by the trial court.   Cox did not appeal the denial of the continuance in his direct appeal.   As the postconviction court stated, trial counsel "did precisely what was reasonable; preparing to the best of her ability but requesting additional time."

[Doc. 15-5 at 8–10].

### b.    Analysis

Applicant does not argue that the state court's decision with respect to Claims 14, 16, and 30 was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).

Applicant also fails to demonstrate that the state court's decision with respect to these claims is contrary to or an unreasonable application of *Strickland* under §2254(d)(1).   Applicant has failed to identify any particular preparation that should have been completed but was not, or to provide any example of his counsel's lack of preparation.   He has failed to identify any information that any particular witness would have provided had they been interviewed and has failed to identify any information that his counsel would have obtained with additional investigation or interviews, or how such information would have affected the outcome of the trial.   The question under *Strickland* is not whether counsel could have done more, but whether counsel's decision not to do

more was "'[objectively unreasonable] in all the circumstances, applying a heavy measure of deference to counsel's judgments.'"   *Turrentine v. Mullin*, 390 F.3d 1181, 1209 (10th Cir. 2004) (quoting *Strickland*) (brackets in original); *see also Mora v. Williams*, 111 F. App'x 537, 550 (10th Cir. 2004) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.") (quotation and citation omitted).

Applicant points to nothing unreasonable in the CCA's denial of these claims and does not argue that the decision was based on an unreasonable determination of the facts in light of the evidence presented.   He has failed to meet his burden of showing that no reasonable argument exists that counsel satisfied *Strickland*'s deferential standard. *See Harmon*, 936 F.3d at 1058.   Habeas relief therefore is not available under §§ 2254(d)(1) or (2).

### 3.    Claim 17

In Claim 17, Applicant alleges that his trial counsel failed to elicit evidence that Applicant's girlfriend, one of the two alleged victims, had stabbed Applicant on previous occasions.   [Doc. 4 at 12].

### a.    State Court Proceedings

During a pre-trial motions hearing, a witness testified that the alleged victim had told her about a prior incident in which the alleged victim stabbed Applicant with a screwdriver that she happened to have in her hand "to get him off of her" while he was biting and choking her.   *See* Jan. 10, 2006 Hr'g Tr. at 49:1–10, 85:7–10.   The witness also testified that the victim told her about another incident in which she had stabbed

Applicant with scissors "to get him off of her." *Id.* at 85:1–10, 68:14–22.   A second witness testified that the alleged victim had told her that she had stabbed Applicant in the neck "to get him off of her."   *Id.* at 20:17–20.

The CCA addressed and rejected Applicant's claim that his trial counsel was ineffective for failing to present evidence that the alleged victim had previously stabbed Applicant.   The CCA explained:

> Finally, Cox's postconviction motions alleged that his trial counsel was ineffective for failing to present evidence that T.M. had previously stabbed him, and that such evidence was important for the jury to assess his self-defense claim and the reasonableness of his fear.   The court denied this claim finding that Cox had failed to establish that such conduct constituted deficient performance because it could have been a strategic choice by counsel to prevent the jury from hearing other bad act evidence surrounding the stabbing incident.   Again, we perceive no error in the court's denial of this claim, but on a different basis than that set forth by the district court.
>
> Here, the record indicates that T.M.'s aunt testified at a pre-trial motions hearing and relayed a conversation she had with T.M. some months before her death.   During that conversation, T.M. told her that she had stabbed Cox to get him off her when he was attacking her.
>
> Initially, we note that Cox's motions do not identify a witness who should have been called to testify about this incident.   Even if we overlook that flaw because the record indicates that T.M.'s aunt might have been able to testify that T.M. once stabbed him, Cox's motions, nevertheless, fail to allege facts establishing the admissibility of such evidence and the prejudice to his case.
>
> Neither motion pleaded facts to show that the out of court statements of the possible witness, or the hearsay statement attributed to T.M., would have been admissible at trial.   Thus, we also conclude that Cox failed to allege sufficient facts to establish that any error by counsel in failing to present this evidence reasonably impacted the outcome of the trial or prejudiced him. *See Dunlap* [*v. People*], 173 P.3d [1–54] at 1063 [Colo. 2007].

[Doc. 15-6 at 16].

b.    Analysis

Applicant does not argue that the state court's decision with respect to Claim 17 was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).    Applicant also fails to demonstrate that the CCA's decision with respect to Claim 17 is contrary to or an unreasonable application of *Strickland* under §2254(d)(1).

The CCA concluded that Applicant's claim failed under the prejudice prong of *Strickland* because Applicant failed to show that the statements would have been admissible at trial, and thus that "any error by counsel in failing to present this evidence reasonably impacted the outcome of the trial or prejudiced him."   [Doc. 15-6 at 16]. Applicant does not assert in his Application or in his Reply that the out-of-court statements concerning the alleged prior incidents were admissible, and that there is thus a reasonable probability the trial result would have been different had his counsel sought to admit them.   *See Strickland*, 466 U.S. at 694; *see also United States v. Larsen*, 175 F. App'x 236, 241 (10th Cir. 2006) (rejecting habeas claim under prejudice prong of *Strickland* where applicant failed to show that exculpatory out-of-court statements would have been admissible).   Applicant has cited to no Supreme Court authority, and this Court is aware of none, which would consider a failure to offer inadmissible evidence to be prejudicial representation by counsel.   Ultimately, the CCA's denial of Claim 17 under the prejudice prong of *Strickland* was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 562 U.S. at 103.   The claim fails on this basis.

4.      **Claim 24**

In Claim 24, Applicant alleges that his trial counsel rendered constitutionally deficient performance when they did not continue to attempt to obtain a *Shreck* hearing. [Doc. 4 at 14].

a.      **State Court Proceedings**

The CCA addressed and disposed of this claim as follows:

In his postconviction motions, Cox alleged that his trial counsel was ineffective for failing to request a *Shreck* hearing or otherwise challenge the qualifications of the prosecution's expert witness in crime scene reconstruction.   In denying this claim, the postconviction court found that Cox failed to establish either deficient performance or prejudice.

We perceive no error in the court's summary denial of this claim.   As raised in his motions, Cox does not allege that the expert was not qualified, or that had counsel challenged his qualifications either by propounding questions to the expert or insisting on a *Shreck* hearing, the court would have changed its conclusion that he was qualified as an expert in blood stain pattern analysis and crime scene reconstruction.   Indeed, the record demonstrates that this witness had decades of experience in crime scene reconstruction, had been involved in over two thousand homicide investigations, and had previously testified as an expert hundreds of times. Thus, even if we were to assume that counsel's failure to challenge this expert's qualifications constituted deficient performance, we conclude Cox failed to allege sufficient facts to establish that there was a reasonable probability that the result of the proceeding would have been different had counsel challenged the expert's qualifications.   *See* [*People v.*] *Villarreal*, 231 P.3d [29] at 33 [Colo. App. 2009].

Furthermore, we note, as did the postconviction court, that trial counsel *did* object at trial to the expert's testimony and the trial court overruled her objection.   The trial objection was sufficient to preserve Cox's challenge to the expert testimony, and on direct appeal, the division of this court addressed that challenge.   We thus agree with the postconviction court's observation that under these circumstances, counsel's performance was neither deficient nor prejudicial.

[Doc. 15-6 at 10–12].

b.    Analysis

Applicant does not argue that the state court's decision with respect to Claim 24 was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).   Applicant also fails to demonstrate that the CCA's decision with respect to Claim 24 is contrary to or an unreasonable application of *Strickland* under §2254(d)(1).

With respect to the deficient performance prong of the *Strickland* analysis, the CCA noted that Applicant's counsel did object to the expert's testimony, sufficiently preserving the issue for appeal, and that the issue was addressed by the CCA on the merits on direct appeal.   Applicant fails to provide any argument or explanation which indicates that his counsel's performance was, nonetheless, deficient.   The CCA further concluded that there was no prejudice under the second prong of *Strickland* since Applicant did not actually assert that the expert – who had been involved in over two thousand homicide investigations and had testified as an expert hundreds of times – was unqualified, or that the trial court would have concluded that he was unqualified if defense counsel had been able to obtain a *Shreck* hearing.   Applicant presents no argument in his present Application as to why his counsel's performance was deficient or prejudicial.   The CCA's determination of Claim 24 was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 562 U.S. at 103.   As such, Applicant is not entitled to relief on Claim 24.

**5.     Claim 25**

In Claim 25, Applicant claims that his trial counsel rendered constitutionally deficient performance when they failed to renew an objection to the prosecution's Colo. R. Evid. R. 404(b) motion concerning evidence of a $50,000 drug deal gone bad. [Doc. 4 at 14].

**a.     State Court Proceedings**

The CCA noted that, at trial,

> the prosecution presented evidence to establish that Cox was a drug dealer who gave T.M. money to get cocaine for him, but she took the money and never gave him the cocaine.   After finding T.M.'s bank statement indicating that a large amount of money had recently been deposited into her bank account, Cox believed that she had stolen his money.   He went to her house and called her demanding that she come home.   When she arrived with E.M., Cox shot and killed both of them.

[Doc. 15-6 at 3].   The CCA then went on to analyze and determine Applicant's argument concerning the admission of the failed drug deal evidence as follows:

> Cox also argued in his motions that trial counsel was ineffective because she was surprised by the prosecution's admission of CRE 404(b) evidence about the failed drug deal and unprepared to challenge its admissibility or rebut it.   The postconviction court found that because the evidence was directly related to establishing Cox's motive for the murders, the evidence was admissible outside of CRE 404(b)'s limits, and thus, counsel's performance was not deficient.
>
> Here, as with his other ineffective assistance of counsel claims, we conclude that the court did not err in denying this claim because the motions failed to allege facts that would establish prejudice.   *See People v. Stovall*, 2012 COA 7M, ¶ 29 (deciding that ineffective assistance claim was properly denied without a hearing because defendant failed to allege facts "that would allow the postconviction court to find that he was prejudiced" by counsel's alleged deficient performance); *see also People v. Vondra*, 240 P.3d 493, 494 (Colo. App. 2010) (stating that we may affirm the postconviction court's ruling on different grounds than those on which it relied).

In his motions, although Cox takes issue with counsel's failure to challenge the admissibility of the drug deal evidence, he does not explain how counsel would have been able to successfully challenge the admission of this evidence such that the result of the proceeding would have been different. Indeed, the evidence about the failed drug deal tended to establish a motive for the murders and provided a more complete picture of the crime and the context in which it occurred.   Thus, even if counsel had objected to its admission or sought a hearing on it, the evidence would, nevertheless, have been admissible under CRE 404(b) to show motive, *see People v. Quintana*, 882 P.2d 1366, 1371 n.8 (Colo. 1994), or as res gestae evidence, *see People v. Rollins*, 892 P.2d 866, 873 (Colo. 1995) ("Evidence that is contemporaneous with and serves to illustrate the character of the crime charged" does not fall within CRE 404(b), but rather is admissible as res gestae evidence.); *People v. Martinez*, 24 P.3d 629, 633 (Colo. App. 2000) (res gestae evidence "provides the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred, including events closely related in time and nature to the charged offense").   Thus, because the motions failed to allege facts to establish how the result of the trial would have been different had counsel challenged that evidence, the postconviction court did not err in summarily denying this claim.   *See Zuniga*, 80 P.3d at 973.

Again, we note that the record discloses more about this claim than asserted in Cox's brief.   The trial court, in response to a pretrial motion by Cox, ruled the evidence was inadmissible hearsay.   When the prosecution referred to the evidence in its opening statement, trial counsel objected, successfully, with the trial court ruling that it would defer a final ruling on admissibility of the failed drug deal until the prosecution presented admissible evidence.   Eventually, the prosecution presented evidence that allowed the admission of the failed drug deal as res gestae evidence and evidence of Cox's motive.   As the postconviction court noted, raising an objection at that point under CRE 404(b) would have been futile, and trial counsel's failure to object was not unreasonable.

[Doc. 15-6 at 12–15].

### b.    Analysis

Applicant does not argue that the state court's decision with respect to Claim 25 was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).   Applicant also fails to demonstrate that the CCA's decision on *Strickland*'s prejudice prong was unreasonable under §2254(d)(1).

35

The CCA concluded that Applicant failed to allege facts demonstrating prejudice since evidence concerning the alleged failed drug deal would have been admissible under Colo. R. Evid. 404(b) to show motive or as res gestae evidence even if counsel had objected to its admission.   Applicant cannot demonstrate that it was unreasonable for the CCA to conclude that there was no reasonable probability that the result of the proceeding would have been different had counsel objected to the evidence under Rule 404(b).   He certainly fails to demonstrate that the state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 562 U.S. at 103.

With respect to the deficient performance prong of *Strickland*, the state court explained that any Rule 404(b) objection would have been futile once the prosecution presented evidence which would have allowed the failed drug deal evidence to be admitted as evidence of motive and as res gestae evidence, and that counsel's failure to object thus was not unreasonable.   Again, state court decisions that rest on matters of state law are binding on a federal habeas court.   *Chapman*, 302 F.3d at 1196.   This Court is bound to accept the CCA's conclusion that the evidence would have been admissible under state law, and Applicant offers nothing to counter the CCA's determination that the evidence was admissible.   Therefore, Applicant has failed to show deficient performance by his counsel, since counsel cannot perform deficiently by failing to raise a meritless issue.   *See Lafler v. Cooper*, 566 U.S. 156, 167 ("Because the objection upon which his ineffective-assistance-of-counsel claim was premised was

meritless, [petitioner] could not demonstrate an error entitling him to relief."). Consequently, habeas relief is not warranted on Claim 25.

### F.    Claims 35–38 and 40–49

In its June 29 Order, this Court noted that while Respondents' Pre-Answer Response [Doc. 15] identified Claims 35–38 and 40–49 as ineffective assistance of appellate counsel claims, the claims appeared to be ineffective assistance of trial counsel claims.   [Doc. 22 at 12–13].   The Court allowed Respondents to present any additional arguments concerning exhaustion of state remedies with respect to these claims in their Answer.   *See* [*id.*].   Respondents state in their Answer that they agree that these are ineffective assistance of trial counsel claims.   Respondents proceed to argue that Applicant never raised these claims in the CCA, and that Applicant is now procedurally barred from raising these unexhausted claims in the state courts.   Applicant does not address Respondents' arguments in his Reply.

The Court respectfully agrees with Respondents that Claims 35–38 and 40–49 are unexhausted because they were not raised on appeal.   *See* [Doc. 15-2 (direct appeal claims); Doc. 15-4 at 3–4 (first Rule 35 postconviction appeal claims); Doc. 15-8 at 2 (second Rule 35 postconviction appeal claims)].   Further, as explained in the Court's June 29 Order, an unexhausted habeas claim which would be precluded from state court review based on an independent and adequate state ground if the applicant now returned to state court to present it, is subject to an "anticipatory procedural bar," and is precluded from federal habeas review.   *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).   Rule 35(c)(3)(VII) of the Colorado

Rules of Criminal Procedure provides that the state court must dismiss any claim that could have been raised in a prior appeal or postconviction proceeding.   *See* Colo. R. Crim. P. 35(c)(3)(VII) ("The court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought."). Applicant fails to demonstrate that Rule 35(c)(3)(VII) is not an independent and adequate state procedural rule.   In any event, the Court finds that the rule is independent because it relies on state rather than federal law.   The rule is also adequate because it is applied evenhandedly by Colorado courts.   *See, e.g., People v. Vondra*, 240 P.3d 493, 494–95 (Colo. App. 2010) (applying Colo. R. Crim. P. 35(c)(3)(VI) and (VII) to reject claims that were or could have been raised in a prior proceeding); *see also LeBere v. Abbott*, 732 F.3d 1224, 1233 n.13 (10th Cir. 2013) (noting that several unpublished cases have indicated Colorado's rule barring claims that could have been raised previously is an independent and adequate state ground precluding federal habeas review).   Here, Claims 35–38 and 40–49 are procedurally defaulted because if Applicant returned to state court to attempt to assert them, they would be barred by Colo. R. Crim. P. 35(c)(3)(VII).

Federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).   To demonstrate cause for his procedural default, Applicant must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule.   *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).   "Objective factors that constitute cause include

interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [applicant]." *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991) (internal quotation marks omitted). If Applicant can demonstrate cause, he also must show "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S.at 750. A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Applicant's pro se status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice to overcome a procedural default. *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

Applicant presents no argument to demonstrate cause and prejudice to overcome his procedural default of the unexhausted claims. He also presents no argument demonstrating that a failure to consider the merits of the defaulted claim will result in a fundamental miscarriage of justice. As a result, Claims 35–38 and 40–49 are procedurally barred.

## CONCLUSION

For the foregoing reasons, Applicant is not entitled to relief on his remaining claims. Accordingly, **IT IS ORDERED** that:

(1)     The Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Doc. 4] is **DENIED;**

(2)     This case is **DISMISSED with prejudice**;

(3)     There is no basis on which to issue a certificate of appealability pursuant to

28 U.S.C. § 2253(c); and

(4)     The Clerk of Court is **DIRECTED** to mail a copy of this Order to:

Keason Burell Cox
#65154
Buena Vista Correctional Facility (BVCF)
P.O. Box 2017
Buena Vista, CO 81211


DATED:   July 11, 2024                          BY THE COURT:

Nina Y. Wang
United States District Judge